IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KICC-ALCAN GENERAL, JOINT
VENTURE, an Alaskan joint venture,

                    Plaintiff,

          v.                                    Case No. 3:15-cv-00255-SLG

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, INC., a Delaware
corporation,

                    Defendant.

## ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Defendant's and Plaintiff's Cross Motions for Summary

Judgment, at Dockets 34 and 37, respectively.  The motions are fully briefed,[1] and the

Court heard oral argument on November 1, 2016.[2]

## BACKGROUND

The parties have largely stipulated to the relevant facts.[3]

Plaintiff KICC-Alcan General (KICC) is an Alaskan joint venture that provides

general contracting and construction management services.  In May 2012, KICC entered

a contract with the U.S. Army Corps of Engineers to construct two buildings at Joint Base

Elmendorf-Richardson.[4]  KICC entered into two subcontracts with three businesses

---

[1] Docket 38 (Pl.'s Opp.); Docket 39 (Def.'s Reply); Docket 41 (Def.'s Opp.); Docket 43 (Pl.'s
Reply).

[2] See Docket 45 (Hr'g Mins.).

[3] See Docket 35 (Statement of Stipulated Facts); Docket 36 (Add'l Statement of Stipulated Facts).

[4] Docket 35 at 2, ¶ 1.

collectively operating as the Superior Group to perform HVAC, electrical, and plumbing work on the project.[5]  Pursuant to the first subcontract, the Superior Group would perform certain HVAC and plumbing work in exchange for a lump sum of $3,991,545.[6]  Under the second subcontract, the Superior Group would perform certain electrical work in exchange for a lump sum of $3,635,468.[7]

As often happens, the project encountered a series of delays.  Consequently, it was not substantially complete until April 2014—over three months after the initially projected completion date.[8]  According to the Superior Group, their work was "repeatedly delayed by the actions of [KICC]."[9]  The Superior Group maintained that, by the end, all the "delays, acceleration, and related impacts caused an increase in the cost of performance" for the Superior Group, resulting in claimed damages to the Superior Group of nearly $2 million dollars.[10]

To account for its increased costs, the Superior Group tendered a "Request for Equitable Adjustment" (REA) to KICC in August, 2014.[11]  In federal contracting, an REA is the opening salvo in a negotiation for a modification to the contract—usually in response

---

[5] Docket 35 at 2, ¶¶ 3–6.  KICC contracted directly with Superior Plumbing & Heating and with Haakenson Electric.  Superior subsequently subcontracted with Alaska Sheet Metal.

[6] Docket 35-1 at 142.

[7] Docket 35-1 at 193.

[8] *See* Docket 35 at 2, ¶¶ 7–8.

[9] Docket 35-5 at 29, ¶ 13.

[10] Docket 35-5 at 31, ¶ 21.

[11] *See* Docket 35-2 at 1 through Docket 35-5 at 14.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 2 of 23

to a directed or constructive change by the government.[12]  In this case, KICC was acting

as the general contractor for a federal contract, and so the Superior Group presented the

REA to KICC.  In order to obtain the desired equitable adjustment, the Superior Group

had to show a change to its contractual obligations that was caused by KICC and which

harmed the Superior Group.[13]  Thus, the REA asserted that the initial delays had not been

"managed by KICC-Alcan in a fair and transparent manner" and that the "lack of

communication" between KICC and the Superior Group and "the failure of KICC-Alcan to

mitigate the effects of the various schedule delays" directly damaged the Superior

Group.[14]  After some limited discussion between KICC and the Superior Group, KICC

rejected the REA.[15]

The Superior Group then sued.[16]  Its complaint recounted the allegations about

KICC's mismanagement of the project, and asserted that KICC "continued to direct the

[Superior Group] to complete the work according to the original Project schedule."[17]  The

Superior Group made two specific claims.[18]  First, the Superior Group alleged "breach of

---

[12] See Laurence Schor & Aaron P. Silberman, *Equitable Adjustments and Claims*, in FEDERAL GOVERNMENT CONSTRUCTION CONTRACTS 437, 438 (2d ed. 2010) ("An REA is both a request and a negotiation.  The contractor must not only submit its request but also persuade the [contracting officer] to grant it.").

[13] See Schor & Silberman, *supra* note 12, at 438.  The Superior Group would also have had to show the amount of its damages.

[14] Docket 35-2 at 6.

[15] See Docket 35-5 at 22–23 (Sept. 30, 2014 ltr. from S. Lane Tucker to Heath Martin).

[16] See Docket 35-5 at 27 (Compl.).

[17] Docket 35-5 at 31, ¶ 18.

[18] See Docket 35-5 at 32–34.  This in fact amounted to four claims, one against the required construction bond (Count I), one for each of the two subcontracts between the Superior Group

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 3 of 23

express contract," contending that the Superior Group "did supply the services and labor required by Superior's subcontract with KICC-Alcan, which services and labor were accepted by KICC-Alcan and incorporated into the Project, but KICC-Alcan has failed to pay [the Superior Group] in full for the services and labor provided."[19]  Second, the Superior Group alleged "quantum meruit," contending that the Superior Group "provided valuable labor and services to KICC-Alcan" and that KICC "has failed and refused to pay the [Superior Group] for the labor and services referenced herein."[20]

During the relevant period, KICC had insurance from Defendant Crum & Forster Specialty Insurance Company (Crum & Forster) which provided coverage for "'damages' . . . because of a 'wrongful act' to which this insurance applies."[21]  A "wrongful act" is defined in the policy as "an act, error or omission in the rendering or failure to render 'professional services' by any insured."[22]  And the contract defines "professional services" as "those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager."[23]  Read together, then, the contract provided coverage for

---

and KICC (Counts II and III), and one for quantum meruit (Count IV).

[19] Docket 35-5 at 33, ¶¶ 34, 37.

[20] Docket 35-5 at 34, ¶¶ 41, 43.

[21] Docket 35-5 at 73, ¶ 1(a).

[22] Docket 35-5 at 67, ¶ 43.

[23] Docket 35-5 at 66, ¶ 32.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 4 of 23

"damages" caused by "an act, error or omission" in KICC's rendering or failure to render" its "functions . . . that are related to [its] practice as a . . . construction manager."[24]

Faced with the Superior Group's lawsuit, KICC tendered the complaint to Crum & Forster, seeking defense and indemnity.[25] There was apparently some confusion as to whether Crum & Forster initially accepted defense of the matter,[26] but on June 9, 2015 Crum & Forster unequivocally denied coverage for and defense of the lawsuit.[27] KICC therefore proceeded with its own defense, and ultimately settled with the Superior Group before trial.[28]

In the present suit, KICC asserts three causes of action: first, that Crum & Forster breached its duty to defend; second, that Crum & Forster breached its duty to indemnify; and third, Crum & Forster's refusal to defend or indemnify breached its duty of good

---

[24] This formulation comes from inserting the policy definitions for "wrongful act" and "professional services" into the coverage provision: the policy covers "damages or cleanup costs because of [an act, error or omission in the rendering or failure to render {those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager}] to which this insurance applies."

[25] *See* Docket 35-5 at 105 (Mar. 19, 2015 email from Edward G. Rhone to Joan Erickson). Mr. Rhone was acting as KICC's insurance agent.

[26] *See* Docket 35-5 at 107 (Apr. 9, 2015 email from Joan Erickson to Edward G. Rhone). The parties do not agree on the facts in this regard, *see* Docket 37 at 6 n.1, but this issue is immaterial to the Court's resolution of the motions.

[27] Docket 35-5 at 111 (June 9, 2015 ltr. from Patrick Hughes to Edward G. Rhone).

[28] *See* Docket 35-5 at 117 (Settlement Agreement).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 5 of 23

faith.[29]  The parties have stipulated to the facts relevant to liability, and agree that the issue of liability is appropriate for summary judgment.[30]

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

### II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[31]  If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[32]  The non-moving party may not rely on mere allegations or denials.[33]  Rather, that party must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[34]

---

[29] *See* Docket 1 (Compl.) at 5–6.

[30] *See* Docket 34 (Crum & Forster's Mem.) at 10; Docket 48 (Joint Mot. to Stay) at 2.

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[33] *Id.*

[34] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 6 of 23

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[35]  When faced with cross-motions for summary judgment, the court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[36]  To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[37]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[38]

## III. Duty to Defend and Indemnify

The parties have stipulated to the facts material to KICC's first and second causes of action; resolution of these issues presents a pure question of law.  There are three distinct questions in this case: First, did Crum & Forster breach its duty to defend? Second, if it did, does this breach alone render Crum & Forster liable for the amount of settlement?  And third, without regard to whether Crum & Forster breached its duty to defend, must it indemnify KICC for the Superior Group claims?

Because an affirmative answer to the third question eliminates any need to separately consider either the first or second question, the Court will begin there.[39]  The

---

[35] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[36] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[37] *Anderson*, 477 U.S. at 248.

[38] *Id.* at 249.

[39] As explained below, this is so because the duty to defend is broader than the duty to indemnify. The Court addresses the bad faith claim separately below.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 7 of 23

answer to this question turns on the scope of the insurance policy and on the nature of KICC's liability to the Superior Group.

*A. The Policy*

The parties agree that KICC's claims and the insurance policy itself are governed by Alaska law in this diversity action. "The obligations of insurers are generally determined by the terms of their policies,"[40] but those terms are construed "in such a way as to honor a lay insured's reasonable expectations."[41] Of course, a lay insured's reasonable expectations are in turn shaped by the language of the contract, as "construed in accordance with ordinary and customary usage."[42] An ambiguity in the language—that is, when there are two or more reasonable interpretations of the policy—is resolved in favor of the insured.[43]

The parties don't dispute the terms of the insurance policy or how they fit together. The policy provided coverage for "damages or cleanup costs because of an act, error or omission in the rendering or failure to render those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager to which this insurance applies."[44]

---

[40] *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1045 (Alaska 1996) (quoting *Bering Strait Sch. Dist. V. RLI Ins. Co.*, 873 P.2d 1292, 1294 (Alaska 1994)).

[41] *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008) (citing *Allstate Ins. Co v. Falgoust*, 160 P.3d 134, 138 (Alaska 2007)).

[42] *Dowdy*, 192 P.3d at 998 (citing *Falgoust*, 160 P.3d at 139).

[43] *Id.* (citing *Falgoust*, 160 P.3d at 138).

[44] As detailed above, this scope is determined by inserting policy definitions into the relevant coverage provision. *See supra* pages 4–5 (quoting Docket 35-5 at 73, ¶ 1(a); Docket 35-5 at 67, ¶ 43; Docket 35-5 at 66, ¶ 32).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 8 of 23

What the parties do dispute is, first, whether the Superior Group's claimed damages were caused by KICC's "act, error or omission," and second, whether that act or omission was "in the rendering or failure to render" professional services. The Court therefore examines the nature of the Superior Group's claims.

*B. The Superior Group Claims*

As alleged in its complaint, the Superior Group entered into two lump-sum contracts with KICC.[45] The complaint alleged that the Superior Group's work under the contracts "was repeatedly delayed by the actions of KICC-Alcan" and that KICC's actions "caused the [Superior Group] to incur increased . . . . costs."[46] The complaint then set forth what the Superior Group viewed as instances of KICC's mismanagement of the project. According to the Superior Group, (1) initial delays from soil contamination "were not adequately addressed by KICC-Alcan in the Project schedule, caus[ing] a ripple effect"[47]; (2) the project "was further hindered by a lack of timely responses by . . . KICC-Alcan to requests for information or in processing Contract modifications as well as delays related to the structural steel design for the Project . . . which in turn directly impacted the [Superior Group's] work"[48]; and (3) KICC directed various subcontractors to add additional manpower, "which resulted in further crowding and difficulties in executing the

---

[45] Docket 35-5 at 29, ¶¶ 10, 12.  Although the underlying complaint does not state that the contracts were for lump sums, the complaint attached each contract as an exhibit.

[46] Docket 35-5 at 29, ¶ 13.

[47] Docket 35-5 at 30, ¶ 15.

[48] Docket 35-5 at 30, ¶ 16.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 9 of 23

Contract work."[49]  Combined, these "delays, acceleration, and related impacts caused an increase in the cost of performance for [the Superior Group]" in an amount totaling almost $2 million.[50]

The Superior Group did not allege that KICC failed to pay the lump-sum amount originally agreed to in the contracts.[51]  Instead, the Superior Group alleged that it had made "repeated demands for payment from KICC-Alcan for the *increased costs incurred in performing*" its work."[52]  The Superior Group then claimed that it "did supply the services and labor required by Superior's subcontract with KICC-Alcan, which services and labor were accepted by KICC-Alcan and incorporated into the Project, but KICC-Alcan has failed to pay [the Superior Group] in full for the services and labor provided."[53]  This failure, the Superior Group alleged, amounted to a "breach of the parties' contract."[54]

*C. Were the Superior Group claims covered under the policy?*

KICC settled the Superior Group claims before trial.  If all of the settled claims were in fact covered claims under the policy, then Crum & Forster is obliged to indemnify KICC for the liability arising from those claims—here, the amount of the settlement (if that

---

[49] Docket 35-5 at 30–31, ¶ 18.

[50] Docket 35-5 at 31, ¶ 21.

[51] One Superior Group entity, Alaska Sheet Metal, had earlier sought $162,000 from KICC which it alleged it was owed under the terms of the contract.  *See* Docket 35-5 at 31, ¶ 23.  So far as the Court can discern, the Superior Group was not seeking damages for that amount in its lawsuit. *See* Docket 35-5 at 35, ¶ A.

[52] Docket 35-5 at 31, ¶ 24 (emphasis added).

[53] Docket 35-5 at 33, ¶ 32; *see also* Docket 35-5 at 33, ¶ 37.

[54] Docket 35-5 at 33, ¶ 33; *see also* Docket 35-5 at 33, ¶ 38.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 10 of 23

settlement was both reasonable and nonfraudulent). Crum & Forster contends that KICC's liability to the Superior Group is not covered under the policy because it is liability for breach of contract claims. KICC counters that the suit did not raise typical breach of contract claims because the Superior Group was seeking "additional compensation" to offset its "increased cost of performance allegedly caused by KICC-Alcan's mismanagement."[55]

Coverage under the policy extended to damages caused by "an act, error or omission" in KICC's "rendering or failure to render" its "functions . . . that are related to [its] practice as a . . . construction manager."[56] On its face, this requires a simple causation inquiry: was KICC's liability to the Superior Group caused by KICC's performance of its duties as a construction manager? KICC resolved all the claims the Superior Group asserted in its complaint in a settlement.[57] This case does not involved a "mixed" settlement, where some of the claims resolved in settlement would give rise to coverage, while others would not. In such a case, an insurer might be permitted to litigate the portion of the settlement attributable to covered claims.[58] In this case, if all the claims were covered then so is the settlement liability. Thus, the answer turns on the claims asserted in the underlying complaint.

---

[55] Docket 37 at 11.

[56] As detailed above, this scope is determined by inserting policy definitions into the relevant coverage provision. *See supra* pages 4–5 (quoting Docket 35-5 at 73, ¶ 1(a); Docket 35-5 at 67, ¶ 43; Docket 35-5 at 66, ¶ 32).

[57] *See* Docket 35-5 at 117 (Settlement)

[58] *See, e.g.*, Lee R. Russ & Thomas F. Segalla, 14 COUCH ON INSURANCE 3d § 205:74 (2005).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 11 of 23

The Superior Group's complaint alleged that it had experienced "an increase in the cost of performance" as a result of various "delays, acceleration, and related impacts."[59] These delays and acceleration were allegedly caused by KICC's failure to "adequately address[]" the initial delays in construction,[60] KICC's "lack of timely responses" to the Superior Group's requests for information,[61] and the "crowding" on the work site caused by KICC's direction to the Superior Group and other subcontractors to add more manpower.[62]

Each of these allegations contends that KICC's management of the project caused the Superior Group to incur increased costs. The Superior Group claimed that KICC was obligated to pay for those increased costs. The underlying complaint plainly alleged damages (in the amount of the Superior Group's increased costs) that were "because of" KICC's actions as a construction manager.

But the Superior Group's complaint sought damages only for contract- and quasi-contract claims. And professional liability coverage, Crum & Forster asserts, "is not a guarantor of a policyholder's contractual debts."[63] Thus, Crum & Forster maintains that an insured could not "reasonably understand the Policy to mean that KICC-Alcan can demand accelerated work from its subcontractors to compensate for construction delays,

---

[59] Docket 35-5 at 31, ¶ 21.

[60] Docket 35-5 at 30, ¶ 15.

[61] Docket 35-5 at 30, ¶ 16.

[62] Docket 35-5 at 30–31, ¶ 18.

[63] Docket 34 at 12.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 12 of 23

and then pass the cost of paying those subcontractors for the additional work onto its professional liability carrier."[64]  KICC counters that the Superior Group's claims did not arise from a "simple contract dispute" or seek recovery for amounts clearly owed under the contract, but were instead claims for "additional compensation."[65]  In KICC's view, the Superior Group would be entitled to that additional compensation if, and only if, it could show that KICC "failed to grant a time extension to which the Superior Group was entitled."[66]  And to show that entitlement, the Superior Group would have to show that KICC's mismanagement caused delays necessitating an extension.

Crum & Forster argues in its reply that "[t]he fact that the Superior Group incurred additional costs in order to comply with the construction schedule set by KICC-Alcan does not transform the Underlying Lawsuit from a breach of contract action into a negligence case."[67]  Perhaps so, but the fact that the underlying lawsuit was styled a breach of contract action does not automatically eliminate all coverage under this professional liability policy.  Indeed, despite Crum & Forster's broad claim that there cannot be any coverage for breach of contract claims, the policy does not contain a general exclusion for contractual liability or for all claims that arise from contract.[68]

---

[64] Docket 39 at 7.

[65] Docket 37 at 11.

[66] Docket 44 at 8.

[67] Docket 39 at 5–6.

[68] The policy contains an exclusion for "liability for which the insured is obligated to pay 'damages' by reason of the assumption of liability in a contract or agreement."  Although Crum & Forster initially pointed to this clause when it first denied coverage, it does not refer to it in its briefing to the Court.  Such provisions exclude coverage for "assumed liability," which is "liability originally incurred by a third party but then taken on by another; it is not liability incurred by a contract

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 13 of 23

Crum & Forster's primary support for its position is not the policy language, but the Ninth Circuit's decision—applying Alaska law—in *Bell Lavalin*.[69] There, the Ninth Circuit held that a professional liability policy did not provide coverage "for a simple contract dispute in which [a subcontractor] performed work for which it was not paid."[70]

In *Bell Lavalin*, the coverage turned on facts as determined by a jury. Bell Lavalin, the insured, was a general contractor and construction manager that won a contract to design and build oil tanks. Bell Lavalin then subcontracted with Conam Alaska for construction services and materials. When the project fell behind schedule, the parties disputed how long an extension was warranted. With work 87% complete, and Bell Lavalin unwilling to grant an additional extension, Conam Alaska walked off the job. Conam Alaska then sued Bell Lavalin for breach of contract and other claims.[71]

Although the work was 87% complete when Conam Alaska ceased performance, at that point Bell Lavalin had paid Conam Alaska only 48% of the contract price. Conam Alaska sought payment for the value of the unpaid work that it had performed, and the jury awarded damages in that amount, plus interest.[72] Thus, Conam Alaska obtained a judgment that "represents the unpaid value of the performance rendered by Conam to the

---

breach." 9A COUCH ON INSURANCE § 129.33, at 129-163 (2015 ed.).

[69] *Bell Lavalin v. Simcoe and Erie Gen. Ins. Co.*, 61 F.3d 742 (9th Cir. 1995).

[70] *Id.* at 746.

[71] *Id.* at 744.

[72] *See Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 152 (Alaska 1992) (the final appeal in the underlying case).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 14 of 23

date it stopped working."[73] On appeal, the Alaska Supreme Court affirmed the trial court's refusal to submit the issue of professional negligence to the jury, concluding that there was insufficient evidence of causation between the alleged professional negligence and damages.[74]

Bell Lavalin sued its insurer for indemnity. The relevant policy provision covered "damages" that "arise[] out of" the insured's performance as a project manager and are "caused by an error, omission or negligent act."[75] Construing that provision, the Ninth Circuit concluded that coverage existed "if three requirements are met: (1) the judgment must be for 'damages'; (2) the liability must arise out of Bell Lavalin's 'performance of professional service for others in the insured's capacity . . . as a project manager'; and (3) the liability must be 'caused by an error, omission or negligent act.'"[76] Bell Lavalin asserted that because its "wrongful refusal to grant a time extension" was the "breach" that resulted in the damages, coverage should exist. The Ninth Circuit rejected this argument because "Bell Lavalin's failure to grant a time extension is irrelevant to the issue of whether Bell Lavalin owes Conam the value of the unpaid work."[77] Any "error, omission or negligent act" in refusing the extension was not the "cause" of the damages, and so there was no coverage. As the Ninth Circuit recognized, "even if Bell Lavalin had *won* . .

---

[73] *Bell Lavalin*, 61 F.3d at 745.

[74] *Conam Alaska*, 842 P.2d at 157.

[75] *Bell Lavalin*, 61 F.3d at 746.

[76] *Id.* at 746.

[77] *Id.*

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 15 of 23

. regarding the time extension issue, it would still owe Conam the value of the 87% of the work performed."[78]  Thus, Bell Lavalin could not prove the third element.

In a footnote, the Ninth Circuit also noted that "the second requirement"—that the liability "arise out of" Bell Lavalin's professional services—"fails for the same reason" as the causation element.  Specifically, the Ninth Circuit concluded that Bell Lavalin's liability "did not arise out of Bell Lavalin's 'performance of professional service for others,'" but instead "arose out of Bell Lavalin's receipt of professional services *from* Conan."[79]

In Crum & Forster's view, *Bell Lavalin* determines the outcome of this case.  It maintains that just as Bell Lavalin did not "cause" the damages to Conam Alaska, so too KICC did not "cause" the damages to the Superior Group.  According to Crum & Forster, this is so because "[t]he insured's obligation to pay sums owed under a contract is imposed *by the contract*; it is not created by any wrongful act of the insured."[80]  And, according to Crum & Forster, the damages in this case arose out of KICC's receipt of services, not the provision of services, just like the damages in *Bell Lavalin.*[81]

Certainly this case bears some resemblance to *Bell Lavalin.*  The policy provision at issue here provides coverage for "damages . . . because of"[82] KICC's "act, error or

---

[78] *Id.* (emphasis in original).

[79] *Id.* at 746 n.3.

[80] Docket 34 at 16 (emphasis in original) (citing *Bell Lavalin*, 61 F.3d at 746).

[81] Docket 34 at 14.

[82] Docket 35-5 at 73, ¶ 1(a).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 16 of 23

omission in the rendering or failure to render"[83] its services as a "construction manager."[84] Thus, similar to the policy in *Bell Lavalin*, the Crum & Forster policy provides coverage only if (1) there is liability for damages; (2) the liability arises out of KICC's performance of professional services; and (3) the liability is caused by KICC's act, error, or omission. Both policies provided coverage for damages caused by the insured's acts, errors, or omissions. Unlike the provision in *Bell Lavalin*, the Crum & Forster provision does not explicitly require an "act" supporting coverage to be "negligent." But setting that distinction aside, the policies were quite similar.

But the underlying lawsuits were not similar. The Superior Group was seeking, as KICC describes it, "additional compensation" beyond the lump-sum amount previously agreed to. Unlike the subcontractor in *Bell Lavalin*, the Superior Group could prevail only if it showed that KICC had wrongly failed to grant an extension or otherwise caused it to incur additional costs. If KICC had done nothing wrong, then the Superior Group would be entitled only to the lump-sum amount on the face of the contract—an amount it had already received and which it was not seeking. In *Bell Lavalin*, the subcontractor had a claim against the general contractor *without regard to* any action or omission on the part of the general contractor. Here, by contrast, the subcontractor had a claim—if at all— only *because of* the general contractor's actions or omissions. KICC's liability arose from the settlement of that claim; thus the liability was "caused" by KICC's act or omissions, satisfying the third element.

---

[83] Docket 35-5 at 67, ¶ 43.

[84] Docket 35-5 at 66, ¶ 32.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 17 of 23

And these damages did "arise out of" KICC's professional services. The specific policy language in this regard is somewhat different than in *Bell Lavalin*. There, the policy required that the liability "arise[] out of the performance of professional services for others."[85] Here, the policy does not use the words "arise out of," but instead provides that the "act, error or omission" that causes the damages must be "in the rendering" of professional services or in the "failure to render" professional services.[86] This distinction may make no substantive difference in the scope of coverage. Rather, each policy provides that there must be a casual connection between the asserted wrongful act and the insured's professional services. In *Bell Lavalin*, the Ninth Circuit held that no coverage existed because as a matter of law the general contractor's failure to grant a time extension was not the cause of the damages. Necessarily, then, the damages did not arise from Bell Lavalin's professional services.

Here, as discussed above, the Superior Group's damages were caused by an act or omission of KICC. The "second element" requires only that those acts or omissions be "in the rendering" of KICC's professional services. The Superior Group's entire complaint is directed toward KICC's alleged mismanagement of the project—either by failing to properly account for the initial delays, failing to communicate essential information to the Superior Group, or causing crowding on the worksite by demanding too many subcontractors add additional labor. Each of these is an act or omission "in the rendering" of KICC's functions as a construction manager.

---

[85] *Bell Lavalin*, 61 F.3d at 746.

[86] *See* Docket 35-5 at 67, ¶ 43.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 18 of 23

The Court acknowledges that the amount of KICC's liability to the Superior Group would be determined, at least in part, by the value of the additional services provided by the Superior Group.[87]  But this fact alone does not mean that the damages were not related to KICC's provision of professional services.  The Superior Group's claims were premised on the theory that KICC's mismanagement required the Superior Group to provide those extra services and incur those additional costs.  The claims and resultant settlement therefore arose not only from the Superior Group's provision of services but also from KICC's acts, errors, and omissions in its provision of construction management services.

Finally, the Court considers Crum & Forster's policy arguments.[88]  First, Crum & Forster contends that "[a]llowing liability coverage for amounts due under a contract for an insured's pre-existing obligations would 'create a moral hazard problem . . . .'"[89]  But the Court does not hold that this professional liability policy extends coverage to any breach of contract claim, or requires indemnification for contractual obligations that exist solely by virtue of the contract.  Rather, consistent with the policy language, the Court holds that this particular professional liability policy provides coverage for damages that are caused by the KICC's acts, errors, or omissions in the provision of professional services.  Like all insurance, this policy does create some moral hazard.  But that hazard

---

[87] *See* Docket 39 at 6.

[88] *See* Docket 34 at 17–19.

[89] Docket 34 at 17 (quoting *August Entm't v. Phila. Indem. Ins. Co.*, 52 Cal. Rptr. 3d 908, 920 (Cal. App. 2007)).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 19 of 23

can be mitigated by changing the policy language, and the Court will not distort the plain language of this contract to achieve a policy result.

For these reasons, the Court concludes as a matter of law that the Superior Group's claims against KICC, and the resultant settlement of those claims, were covered by the Crum & Forster policy, and that Crum & Forster thus had a duty to indemnify KICC.

### D. Duty to defend

Under Alaska law, an insurer's duty to defend and its duty to indemnify are separate and distinct contractual responsibilities.[90] "[T]he duty to defend attaches, if at all, on the basis of the complaint and known or reasonably ascertainable facts at the time of the complaint."[91] As the Supreme Court of Alaska has explained, "[w]here the facts alleged in the complaint, if proven, would give rise to a finding of liability covered by the policy, the insurer must defend the insured."[92] When there are multiple theories of liability, some covered and some not, "the insurer's duty to defend may require it to defend even if the most likely theory of recovery is one for which there is no insurance coverage."[93]

Most significant to this case, the duty to defend is broader than the duty to indemnify.[94] Because the Court has concluded that the Superior Group's claims against

---

[90] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992).

[91] *Attorneys Liab. Prot. Soc'y, Inc., v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1111–12 (Alaska 2016).

[92] *State, Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*, 939 P.2d 788, 792 (Alaska 1997) (citing *Afcan v. Mut. Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979)).

[93] *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113, 1115 (Alaska 1993) (citing *Afcan*, 595 P.2d at 638 and *National Indem. Co. v. Flesher*, 469 P.2d 360, 366 (Alaska 1970)).

[94] *See, e.g.*, *Brannon v. Continental Cas. Co.*, 137 P.3d 280, 284 n.11 (Alaska 2006) ("We have repeatedly observed that the duty to defend is separate from and broader than the duty to

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 20 of 23

KICC were all covered under the policy, Crum & Forster necessarily also had a duty to defend against those claims.[95]  The Court finds as a matter of law that Crum & Forster breached its duty to defend.  Accordingly, the Court will grant summary judgment to KICC as to Crum & Forster's liability on this claim.

### E. Damages

An insurer that breaches the duty to defend is liable for the insured's post-tender defense costs.[96]  And "an insurer that breaches its contract is liable for that amount of a reasonable settlement reached by the insured which falls within the coverage provided by the policy," so long as "the settlement was reasonable and nonfraudulent."[97]  The parties have not fully briefed any issues surrounding the amount of damages, and the Court cannot determine the amount of damages as a matter of law on the record before it.

## IV. Bad Faith

The Court has determined that Crum & Forster was obligated to both defend and indemnify KICC.  KICC contends that Crum & Forster's refusal to do so was in bad faith, entitling KICC to additional damages.  To establish a bad faith claim against an insurer,

---

indemnify.").

[95] Because the Court had concluded that the claims were covered, it does not reach the issue of the extent to which an insurer that breaches its duty to defend may be liable for a subsequent settlement in the underlying case irrespective of the extent of coverage under the policy.  *See* Docket 37 at 12; Docket 39 at 12.

[96] *See Afcan*, 595 P.2d at 646

[97] *Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 468 n.20 (citing *Afcan*, 595 P.2d at 646–47).

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 21 of 23

the insured must show at least "that the insurer's actions were objectively unreasonable under the circumstances."[98]

KICC contends that "Crum & Forster offers no reasonable justification for denying the benefits promised by the Policy, and it acted in reckless disregard because of its lack of any reasonable basis for denying the claim."[99] But as the foregoing analysis makes clear, Crum & Forster's obligations were not obvious in light of *Bell Lavalin*, and were reasonably and legitimately contested. Crum & Forster's position that there could not be coverage for claims such as the Superior Group's was objectively reasonable, even if the Court has found it to have been incorrect. The Court therefore concludes that no reasonable jury could find that Crum & Forster's actions were "objectively unreasonable," and therefore will grant Crum & Forster's motion with regard to KICC's third cause of action.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that:

- Crum & Forster's Motion for Summary Judgment at Docket 34 is GRANTED IN PART and DENIED IN PART. The Court denies the motion as to KICC's first and second causes of action, and grants the motion as to KICC's third

---

[98] *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 697 (Alaska 2014). The Alaska Supreme Court has not further defined the elements of a bad faith claim. *See id.* (citing *Hillman v. Nationwide Mut. Fire. Ins. Co.*, 855 P.2d 1321, 1323 (Alaska 1993)). But this Court has identified two elements: (1) that the insurer "lacked a reasonable basis for denying coverage" and (2) that the insurer "had knowledge that no reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim." *See United States v. CNA Fin. Corp.*, 168 F. Supp, 2d 1109, 1124 (D. Alaska 2001).

[99] Docket 37 at 15.

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 22 of 23

cause of action.  The Court finds that Crum & Forster did not breach its duty
of good faith.

- KICC's Motion for Summary Judgment at Docket 37 is GRANTED IN PART
  and DENIED IN PART.  The Court grants the motion as to KICC's first and
  second causes of action, and denies the motion as to KICC's third cause of
  action.  The Court finds that Crum & Forster breached its duty to defend
  and that it breached its duty to indemnify KICC for the Superior Group
  damages.

This order resolves only the issues of liability, and does not establish the amount
of damages.  The parties are therefore ORDERED to file a joint status report and
proposed schedule for discovery and pretrial motions within 28 days of this order.

DATED this 16th day of March, 2017 at Anchorage, Alaska.

                                        */s/ Sharon L. Gleason*
                                        UNITED STATES DISTRICT JUDGE

Case No. 3:15-cv-00255-SLG, *KICC-Alcan General, j.v., v. Crum & Forster Specialty Ins. Co.*
Order re Cross Motions for Summary Judgment
Page 23 of 23